United States of America
Eastern District of Michigan
Southern Division

United States of America,

Plaintiff,

vs.

Approximately $18,791,680.499 in United States Funds & Precious Metals As Described Below:

All Funds on Deposit (approx. $111,674.44 in funds as of August 26, 2026) from Bank Account #XXXXXX6590 held in the name of Quality Behavioral Health, Inc. at Citizens Bank (26-FBI-005789),

All Funds on Deposit (approx. $201,017.05 in funds as of August 26, 2026) from Bank Account #XXXXXX6620 held in the name of Quality Behavioral Health, Inc. at Citizens Bank (26-FBI-005790),

All Funds on Deposit up to and including $2,500,000.00 in funds as of August 26, 2026 from Bank Account #XXXXXXXX7601 held in the name of Quality Behavioral Health, Inc. at Flagstar Bank (26-FBI-005791),

All Funds on Deposit (approx. $2,027,872.80 in funds as of August 26, 2026) from Bank Account #XXXXXXXX9234 held in the name of Quality Behavioral Health, Inc. at Flagstar Bank (26-FBI-005792),

Civil Case No. 26-cv-13589

Honorable
Magistrate Judge

**JURY DEMAND**

All Funds on Deposit (approx. $2,801,045.67 in funds as of August 26, 2026) from Bank Account #XXXXX4826 held in the name of Quality Behavioral Health, Inc. and Naveed Syed at First State Bank (26-FBI-005793),

All Funds on Deposit up to and including $3,759,000.00 in funds as of August 26, 2026 from Bank Account #XXXX3266 held in the name of Quality Behavioral Health, Inc. and Naveed Syed at First State Bank (26-FBI-005794),

All Funds on Deposit (approx. $2,246,631.84 in funds as of August 26, 2026) from Bank Account #XXXXX30-06 held in the name of Quality Behavioral Health, Inc. at Lake Michigan Credit Union (26-FBI-005795),

All Funds on Deposit (approx. $65,649.25 in funds as of August 26, 2026) from Bank Account #XXXXXX4574 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005796),

All Funds on Deposit (approx. $1,679,891.14 in funds as of August 26, 2026) from Bank Account #XXXXXX4587 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005797),

All Funds on Deposit (approx. $1,885,258.73 in funds as of August 26, 2026) from Bank Account #XXXXXX1510 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005798),

All Funds on Deposit (approx. $69,525.48 in funds as of August 26, 2026) from Bank Account #XXXXXXXX9020 held in the name

of Quality Behavioral Health, Inc. at Bank of America (26-FBI-005799),

All Funds on Deposit up to and including $325,848.47 in funds as of August 26, 2026 from Bank Account #XXXXXXXX6874 held in the name of Naveed Syed at Bank of America (26-FBI-005800),

All Funds on Deposit (approx. $756,356.32 in funds as of August 26, 2026) from Bank Account #XXXXXXXX3889 held in the name of Quality Behavioral Health, Inc. at Bank of America (26-FBI-005801),

All Funds on Deposit up to and including $129,903.30 in funds as of August 26, 2026 from Bank Account #XXXXXXXX8586 held in the name of Packard Hotels, Inc. at Bank of America (26-FBI-005802),

All Funds on Deposit up to and including $1,371.06 in funds as of August 26, 2026 from Bank Account #XXXXX2808 held in the name of Naveed Viquar Syed and Maliha I S Farooqui at JPMorgan Chase Bank (26-FBI-005803),

$109,812.00 U.S. Currency from a dresser drawer at XXXX Marcus Dr, Troy, MI (26-FBI-006110),

$122,194.00 U.S. Currency from XXXX Owendale Dr, Troy, MI; of which $52,084.00 from safe above toilet, $26,000.00 from safe below desk, and $44,110.00 from safe above cabinet (26-FBI-006111),

Miscellaneous Precious Metals from safe at XXXX Marcus Dr, Troy, MI (26-FBI-006112),

Miscellaneous Precious Metals from safe
above cabinet at XXXX Owendale Dr, Troy,
MI (26-FBI-006113),

Defendants *in rem.*

---

Complaint for Forfeiture

---

The United States of America, by and through its counsel, Jerome F. Gorgon Jr, United States Attorney for the Eastern District of Michigan, and Philip A. Ross, Assistant United States Attorney, states upon information and belief as follows in support of this Complaint for Forfeiture:

1. This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C) (health care fraud civil forfeiture), 18 U.S.C. §1347 (health care fraud) 18 U.S.C. § 1594(e)(1) (forced labor civil forfeiture) and 18 U.S.C. 1589 (forced labor).

2. The defendants *in rem* constitute gross proceeds of health care fraud, and or, constitute property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of forced labor, and or any property, real or personal, derived from, any proceeds that such person obtained directly or indirectly, as a result of forced labor, or any property traceable to such property.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

4. This Court has jurisdiction over this forfeiture action, pursuant to 28 U.S.C. § 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Government's claims occurred in the Eastern District of Michigan.

6. Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(b), as the Defendant *in rem* was found and seized in the Eastern District of Michigan.

## DEFENDANTS *IN REM*

7. The defendants *in rem* consist of the following:

   a. All Funds on Deposit (approx. $111,674.44 in funds as of August 26, 2026) from Bank Account #XXXXXX6590 held in the name of Quality Behavioral Health, Inc. at Citizens Bank (26-FBI-005789),

   b. All Funds on Deposit (approx. $201,017.05 in funds as of August 26, 2026) from Bank Account #XXXXXX6620 held in the name of Quality Behavioral Health, Inc. at Citizens Bank (26-FBI-005790),

c. All Funds on Deposit up to and including $2,500,000.00 in funds as of August 26, 2026 from Bank Account #XXXXXXXX7601 held in the name of Quality Behavioral Health, Inc. at Flagstar Bank (26-FBI-005791),

d. All Funds on Deposit (approx. $2,027,872.80 in funds as of August 26, 2026) from Bank Account #XXXXXXXX9234 held in the name of Quality Behavioral Health, Inc. at Flagstar Bank (26-FBI-005792),

e. All Funds on Deposit (approx. $2,801,045.67 in funds as of August 26, 2026) from Bank Account #XXXXX4826 held in the name of Quality Behavioral Health, Inc. and Naveed Syed at First State Bank (26-FBI-005793),

f. All Funds on Deposit up to and including $3,759,000.00 in funds as of August 26, 2026 from Bank Account #XXXX3266 held in the name of Quality Behavioral Health, Inc. and Naveed Syed at First State Bank (26-FBI-005794),

g. All Funds on Deposit (approx. $2,246,631.84 in funds as of August 26, 2026) from Bank Account #XXXXX30-06 held in the name of Quality Behavioral Health, Inc. at Lake Michigan Credit Union (26-FBI-005795),

h. All Funds on Deposit (approx. $65,649.25 in funds as of August 26, 2026) from Bank Account #XXXXXX4574 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005796),

i. All Funds on Deposit (approx. $1,679,891.14 in funds as of August 26, 2026) from Bank Account #XXXXXX4587 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005797),

j. All Funds on Deposit (approx. $1,885,258.73 in funds as of August 26, 2026) from Bank Account #XXXXXX1510 held in the name of Quality Behavioral Health, Inc. at Huntington National Bank (26-FBI-005798),

k. All Funds on Deposit (approx. $69,525.48 in funds as of August 26, 2026) from Bank Account #XXXXXXXX9020 held in the name of Quality Behavioral Health, Inc. at Bank of America (26-FBI-005799),

l. All Funds on Deposit up to and including $325,848.47 in funds as of August 26, 2026 from Bank Account #XXXXXXXX6874 held in the name of Naveed Syed at Bank of America (26-FBI-005800),

m. All Funds on Deposit (approx. $756,356.32 in funds as of August 26, 2026) from Bank Account #XXXXXXXX3889 held in the name of Quality Behavioral Health, Inc. at Bank of America (26-FBI-005801),

n. All Funds on Deposit up to and including $129,903.30 in funds as of August 26, 2026 from Bank Account #XXXXXXXX8586 held in the name of Packard Hotels, Inc. at Bank of America (26-FBI-005802),

o. All Funds on Deposit up to and including $1,371.06 in funds as of August 26, 2026 from Bank Account #XXXXX2808 held in the name of Naveed Viquar Syed and Maliha I S Farooqui at JPMorgan Chase Bank (26-FBI-005803),

p. $109,812.00 U.S. Currency from a dresser drawer at XXXX Marcus Dr, Troy, MI (26-FBI-006110),

q. $122,194.00 U.S. Currency from XXXX Owendale Dr, Troy, MI; of which $52,084.00 from safe above toilet, $26,000.00 from safe below desk, and $44,110.00 from safe above cabinet (26-FBI-006111),

r. Miscellaneous Precious Metals from safe at XXXX Marcus Dr, Troy, MI (26-FBI-006112),

s. Miscellaneous Precious Metals from safe above cabinet at XXXX Owendale Dr, Troy, MI (26-FBI-006113).

8. The items listed in Paragraph 7(a) through 7(s) above shall be hereafter referred to as the "defendants *in rem*" or the "subject property."

9. The Subject Property was seized by agents and/or officers of the

Federal Bureau of Investigation (FBI) on or about August 26, 2026. The defendant funds identified in Paragraph 7(a) through 7(s) have will be into the United States Marshal's Service Seized Assets Deposit Fund. Funds seized from Bank of America will remain on deposit pending resolution of a motion pending in the United States District Court for the Eastern District of Michigan. The precious metals remain in the custody of the Federal Bureau of Investigation.

**Statutory Basis for Civil Forfeiture**

10. Title 18, United States Code, Section 1347 prohibits engaging in schemes to defraud Medicaid and other health benefit programs.

11. Whoever knowingly and willfully executes a scheme, or attempts a scheme or artifice –

a. to defraud any health care benefit program; or
b. to obtain, by means of false and fraudulent pretenses, representations, or promises, any of the money owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services shall be fined under this title or imprisoned not more than 10 years, or both.

12. Title 18, United States Code, Section 24(b) defines a "health care benefit program" as, among other things, "any public or private plan…affecting commerce under which any medical benefit, item, or service is provided to any

individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

13. Title 18, United States Code, Section 1589 prohibits in engaging in forced labor.

14. Whoever knowingly provides or obtains the labor or services of a person by any one of, or any combination of, the following means:

a. by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

b. by means of serious harm or threats of serious harm to that person or another person;

c. by means of the abuse or threatened abuse of law or legal process;

d. by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm, or physical restraint,

e. The term "serious harm" means any harm, whether physical or financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue to performing labor or services to avoid incurring that harm.

f. Whoever violates this section shall be fined under this title, imprisoned for not more than 20 years, or both.

**Factual Basis for Forfeiture**

15. Naveed Syed, the owner and operator of Quality Behavioral Health (QBH) engaged in a scheme to defraud Medicaid by billing for services not rendered and furthered this scheme by using forced labor provided by the same Medicaid beneficiaries he purports to treat at QBH.

16. The subject property is subject to forfeiture to the United States of America pursuant to 18 U.S.C. Section 981(a)(1(C)(health care fraud forfeiture), as personal property constituting proceeds from violations of Title 18 United States Code, 1347 (Health Care Fraud) and Title 18, United States Code, Section 1594(e)(1)(forced labor forfeiture) as constituting personal property used or intended to be used to facilitate the commission of forced labor and or property constituting the proceeds of forced labor from violations of Title 18, United States Code, Section 1589 (forced labor).

17. Facts supporting this evidentiary determination include, but are not limited to, the following:

18. Quality Behavioral Health (QBH) is a non-profit organization which purports to provide services related to substance use recovery to Medicaid

beneficiaries in the Eastern District of Michigan operating facilities in Troy and Detroit, Michigan.

*Medicaid Fraud*

19. The Medicaid Program (Medicaid) is a joint Federal and State program that provides health coverage to low-income individuals and families with specific eligibility criteria and benefits varying by state.

20. Pursuant to Title XIX of the Social Security Act (42 USC 1396, et seq.) and the Michigan Social Welfare Act (400.1, et seq.; MSA 16.614(11), as amended, the Michigan Department of Community Health (DCH) administers the Michigan Medical Assistance Program (Medicaid).

21. Medicaid is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

22. Health care providers who seek to bill Medicaid are informed of the rules and responsibilities through provider manuals that are provided to them by DCH at the time of enrollment and periodically receive correspondence when policy/procedural changes occur. Providers are advised that they can only submit claims to Medicaid for medically necessary services they render, and providers are required to maintain patient records to verify that the services were provided as described on the claim.

23. Medicaid participating providers and/or facilities apply to Medicaid for the ability to bill Medicaid. As part of the application process, the providers must certify that they will comply with all Medicaid statutes, regulations, and program guidance and they will not submit claims in reckless disregard of whether the claims are payable.

24. Upon certification, each provider is issued a National Provider Identification (NPI) number. Medical providers submit claims to Medicaid using their assigned NPI.

25. In order to receive reimbursement for a covered service from Medicaid, a provider is required to submit a claim, either electronically or using a form, containing the required information appropriately identifying the provider, beneficiary, and services rendered, among other things. Each claim for reimbursement includes, at a minimum, the beneficiary's name, the beneficiary's claim number, the date of service, the diagnosis/nature of illness, and the procedure/services (annotated by a procedure code).

26. In order to bill the Medicaid Program, a medical provider submits bills which contain either Common Procedural Terminology (CPT) Code(s) or Healthcare Common Procedure Coding System (HCPCS) Code(s). CPT codes are individualized numbers which are assigned to medical, surgical, and diagnostic procedures. HCPCS codes are additional codes that identify products, supplies, and

services not used under CPT to include "H codes" for behavioral health and substance use disorder services. HCPCS codes are used by Medicaid to determine the amount of reimbursement, or payment, a medical provider will receive for the task or service performed on a patient. As HCPCS codes are meant to ensure uniformity, all medical providers and insurance companies use the same set of HCPCS codes. The terms HCPCS and CPT are commonly used interchangeably as they are both used to submit to health insurance providers for reimbursement for services rendered. This affidavit will use HCPCS.

27. Within the state of Michigan there are managed care organizations (MCO) to include Medicaid Health Plans, Dental Plans, and Prepaid Inpatient Health Plans (PIHP). An MCO is a healthcare delivery system that manages costs, utilization, and quality for members.

28. Detroit Wayne Integrated Health Network (DWIHN) is a PIHP for the state of Michigan in Wayne County.

29. DWIHN receives Medicaid reimbursements for services delivered to eligible members through designated providers. DWIHN is responsible for providing and managing mental and behavioral health programs within Wayne County, Michigan.

30. QBH is a designated provider within the DWIHN system of care. For QBH to receive Medicaid funds, QBH submits HCPCS codes and any required

documentation for payment to DWIHN through a system called Mental Health Wellness Information Network (MH-WIN). DWIHN provides payment to QBH for submitted HCPCS codes associated with services rendered through the Medicaid funds DWIHN receives.

31. QBH entered into a Statement of Work agreement with DWIHN for a most recent term of October 1, 2025, through September 30, 2026. QBH has entered into similar statement of work agreements with DWIHN in previous years (2023 – 2026).

32. The purpose of the statement of work is to ensure DWIHN, through its service provider (QBH), will provide quality services to individuals in Wayne County who are served by this agreement. Service providers shall facilitate access to needed services, ensure appropriateness of care, and promote satisfaction with services.

33. The statement of work encompasses outpatient, IOP (intensive outpatient management), women specialty services, recovery support service/relapse prevention, recovery housing, case management, withdrawal management, residential, and opioid treatment program. The service locations covered under this agreement are 6821 Medbury Detroit, MI 48213, 745-751 E. Grand Blvd, Detroit, MI 48207, 37490 Dequindre, Sterling Heights, MI, and 7220 Gratiot, Detroit, MI 48213.

34. The agreement states the service provider shall comply with and perform the services in accordance with the applicable guidelines and requirements set forth in the statement of work agreement, the Medicaid provider manual, then-current DWIHN policies, MDHHS guidelines, CMS guidelines, and other applicable law and regulations.

35. Additionally, the agreement states the service provider shall provide sufficient resources including properly trained professionals to perform the services, including any task necessary and inherent to provide the services in accordance with the applicable guidelines and standards as required by DWIHN.

36. Syed signed the agreement on Tuesday, November 11, 2025, as the authorized representative of QBH. The president and CEO of DWIHN signed the agreement on Wednesday November 12, 2025.

37. Under the statement of work, levels of care are determined using the American Society of Addition Medicine (ASAM) Continuum. When a patient first enters residential treatment, they are assessed using an ASAM Continuum. An ASAM continuum is an assessment tool that allows clinicians, counselors, and other staff to assess individuals with addictive substance use disorders and co-occurring conditions. It provides a framework for organizing addiction treatment systems and helps professionals determine the appropriate level of care based on an individual's needs.

38. Clinical assessments, service/treatment planning, discharge planning including recovery support preparations are required throughout the entire length of stay.

39. The statement of work also notes the service provider must provide a planned regimen of 24-hour evaluation, care, and treatment in a residential setting. QBH provided a chart of daily activities to DWIHN in support of providing a 24-hour regimen. QBH claimed to provide a structured program from 5:00 a.m. to 11:00 p.m. every day. The services they claimed to offer include activities like relapse prevention, nutrition and wellness, behavioral health, anger management, group therapy, skill building: coping skills, career development, creative writing, family therapy, and acupuncture.

40. Witness described that QBH provided little to none of these services and stated in summary:

a. Some clients at QBH wouldn't engage in treatment or had never received treatment while at QBH. Most of the employees at QBH are former clients and the counselors were not certified counselors. Other beneficiaries were simply sitting in a group setting and hanging out.
b. Patients at QBH sat around and watched television to pass the time.
c. A patient stated he/she did not receive any help during his/her time at QBH. They never met with a counselor or had group therapy.

d. While at inpatient treatment, patients did not receive any services. According to one witness: "There was group therapy, but it was run, by a bunch of clowns. A couple of guys would come in for group therapy, but it was all a 'farce.' There was no sense of receiving treatment at QBH."

e. Patients who are in residential treatment do not receive enough services at QBH. One witness stated: "They typically sleep, hang around, tell stories, play cards, or read."

f. Syed directed an employee to create fake patient progress notes in response to a DWIHN audit because none of the required treatment plans or patient notes were included as required in the files subject to the audit. Syed also directed the employees to backdate the patient files with specific dates he chose.

g. Syed complained to an employee about the quality of the fake patient files and suggested that ChatGPT provided many options which would have survived DWIHN scrutiny.

h. QBH also submitted more than $611,000 in claims for housing male clients in hallway houses despite lacking necessary certifications to house male clients.

*Forced Labor*

41. Former beneficiaries reported to law enforcement that Syed interviews patients who are actively treating to determine if they possess any skills he can utilize after they complete treatment;

42. Syed asked personal questions about the beneficiary's residential address, their marital status, their disability status, and their physical abilities to do manual labor.

43. If the Medicaid beneficiary possessed a certain skill which Syed could use at his facilities, he would hire the patient for a period known as their "trial period."

44. Some of the beneficiaries were required to sign "volunteer agreements" in order to be paid. The volunteer agreement is a three to four page document with terms of employment including compensation of $40 per week. Syed described these agreements in consensually monitored recordings stating "Gotta pat myself on the back for this one. Saved me from a lawsuit."

45. Syed required some of the Medicaid beneficiaries to work 12-hour days, six to seven days per week.

46. Some of the Medicaid beneficiaries reside in Syed-controlled facilities where they are were required to pay rent. If a Medicaid beneficiary requested a pay raise, Syed would raise their rent by a corresponding amount.

47. Syed enacted rules for beneficiaries to follow:

a. The beneficiaries must work 12-hour days, six or seven days per week.

b. The beneficiaries must live in a QBH owned building to maintain work.

c. The beneficiaries must ask permission to leave Syed-controlled facilities when they are not working.

d. The beneficiaries must be prescribed substance use disorder medication like Methadone, Suboxone, or Vivitrol while working.

e. The beneficiaries living at the Packard Motel, a Syed-controlled facility, are not allowed to receive mail or update their address to the motel address.

f. The beneficiaries must have and use a Bridge Card. Meals are not provided. A Bridge Card is a Food Assistance Program (FAP, formerly known as food stamps), which helps eligible families buy food and these monthly benefits are placed on a Bridge Card. The Bridge Card is like a debit card for food and can be used at most grocery stores.

48. Syed directed employees to prescribe medications to QBH patients and Medicaid beneficiaries such as methadone, suboxone, or Vivitrol for opioid addiction even if it were not medically necessary.

49. Medicaid beneficiaries also expressed a fear of eviction. If they did not follow Syed's rules, he would kick them out immediately. Medicaid beneficiaries

told law enforcement that Syed regularly reminded them that he had the power to take away the roof over their heads. Given their addiction status, broken relationships, and lack of income, the Medicaid beneficiaries learned not to advocate for themselves for fear of eviction and no other options.

50. Bank records illustrate that the above-described defendants in rem constitute or are traceable to Syed's scheme to defraud Medicaid and or constitute or are traceable to property used or intended to be used to facilitate the commission of forced labor.

## CLAIM

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs One (1) through 50 (50) above, and all subparagraphs therein.

52. Based upon the following facts and the applicable law, the United States asserts that the subject property is subject to forfeiture to the United States of America pursuant to 18 U.S.C. Section 981(a)(1)(C), as personal property constituting or traceable proceeds from violations of Title 18 United States Code, Section 1347 (Health Care Fraud) and Title 18, United States Code, Section 1594(e)(1)(Forced Labor) as property constituting or traceable to property used or intended to be used to facilitate the commission of forced labor and or property

traceable the commission of forced labor in violation of Title 18, United States Code, Section 1589.

## DEMAND FOR JURY TRIAL

Plaintiff, United States of America, respectfully requests a trial by jury in this case.

## RELIEF

WHEREFORE Plaintiff, the United States of America, respectfully requests that a warrant for arrest of the defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendants *in rem* be condemned and forfeited to the United States of America for disposition according to law; and that the United States be granted other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

//

//

//

//

//

//

//

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

s/Philip A. Ross
Philip A. Ross
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9790
Email: Philip.ross@usdoj.gov
VA State Bar No. 70269

Dated: September 22, 2026

## VERIFICATION

I, LeAnna White, am a Special Agent with the Federal Bureau of Investigation (FBI). I have read the foregoing Complaint for Forfeiture and assert under penalty of perjury of the laws of the United States that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers and agents.

LeAnna Wille
Federal Bureau of Investigation (FBI)

Dated: September 22, 2026